IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JCM, LLC (a Kansas Limited Liability
Company) and JERRY C. MEACHAM,

        Plaintiffs

vs.                                                     Case No. 12-1451-SAC

HEINEN BROS. AGRA SERVICES, INC.,

        Defendant.

MEMORANDUM AND ORDER

The case comes before the court on the defendant Heinen Bros. Agra Services, Inc.'s ("Heinen Bros.") motion for summary judgment (Dk. 45) arguing that the plaintiffs lack standing to bring this action and that the plaintiffs' punitive damages claim lacks sufficient evidence to raise a genuine issue of material fact. As the owner and operator of a hunting lodge and outfitting business on property in Chautauqua County, Kansas, in June of 2011, the plaintiff JCM, LLC ("JCM") brings this action alleging the Heinen Bros. aerially applied a herbicide on abutting land so as either to spray directly the plaintiff's property or to allow drifting of the spray onto the plaintiff's property. The spray killed a large number of trees for which JCM is seeking damages in excess of $100,000. After researching the issues and reviewing the filings, the court denies the defendant's motion finding that the plaintiff JCM has standing and that there are genuine issues of material fact to preclude summary judgment on the punitive damages claim.

**STATEMENT OF UNCONTROVERTED MATERIAL FACTS**

In June of 2011, Adam Way, an employee-pilot for Heinen Bros., aerially sprayed the herbicide Remedy Ultra to crop ground belonging to Lynn Kelly in rural Chautauqua County, Kansas. Immediately south of this ground was property used as a hunting preserve and owned by the plaintiff JCM. This action was brought when trees on the plaintiff's property were damaged allegedly because of herbicide drift from this aerial spraying.

Sometime in July 2012, the Kansas business registration for JCM was forfeited. By special warranty deed dated November 14, 2012, JCM transferred its property to JCM 082763, a Florida limited liability company registered on November 6, 2012. The plaintiff Jerry C. Meacham ("Meacham") is the member/manager of both limited liability companies. This transfer of property between the companies did not include an express transfer of money or any agreement regarding the damage, damage claim or payment for damage, arising from the alleged event in June of 2011. On December 5, 2012, JCM 082763 filed this suit, and on April 4, 2013, JCM's business registration with the State of Kansas was reinstated. The court granted JCM 082763's motion to substitute JCM and Meacham as the plaintiffs in this action.

The Kansas Department of Agriculture ("KDA") sent its investigator, Brice Denton, to make investigatory findings about this spraying incident. Adam Way, Heinen Bros.'s pilot, told Denton that he

applied the herbicide when the winds were out of the northwest at a speed of 5 mph. The weather data for nearby communities showed wind speeds from 11.5 to 13.8 mph for the same time period. Denton testified that these higher wind speeds would be consistent with the herbicide damage he observed on the plaintiff's property located three-quarters of a mile from the spray site. For purposes of this motion, the defendant concedes to wind speeds of between 11.8 to 13.8 mph.

Denton's report summarized that Heinen Bros. aerially applied Remedy Ultra to "157 acres of pasture on 6/15/11 immediately north of Jerry Meacham's property and that tree leaves were showing symptoms consistent with phenoxy exposure." (Dk. 49-3, p. 2). Denton inspected the plaintiff's property and took vegetation and soil samples. Denton recorded his observation that, "[t]he north side of trees on Mr. Meacham's property where (sic) showing signs of herbicide injury for at least 3/4 of a mile to the south of the target field." *Id*. Denton's report included the following taken from herbicide's label:

> <u>Label</u>: Remedy Ultra EPA Reg# 62719-552 on page 2 under Avoiding Injurious Spray Drift make applications only when there is little or no hazard from spray drift. Small quantities of spray, which may not be visible, may seriously injure susceptible plants. Do not spray when wind is blowing toward susceptible crops or ornamental plants that are near enough to be injured.

(Dk. 49-3, p. 3). Denton testified that this herbicide is more toxic than 2, 4-D.

3

Bert Hawkins monitors the plaintiff's property and keeps some of his cattle on this property. Living approximately one mile east of the property, he recalls the spraying incident and has experience with using herbicide to control weeds. Hawkins has averred "that it was way too windy to be spraying that morning. I saw the cropduster doing the spraying and it was drifting like crazy." (Dk. 49-5, p. 3). Hawkins also states the wind speeds that morning were at least between 11.5 and 13.8 mph.

**STANDING**

"[T]he party seeking to invoke federal jurisdiction bears the burden of establishing standing." *Cressman v. Thompson*, 719 F.3d 1139, 1144 (10th Cir. 2013) (internal quotation marks and citation omitted). "Absent a plaintiff with constitutional standing, federal courts lack jurisdiction." *Southern Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1153 (10th Cir. 2013) (internal citation omitted). "[S]tanding is determined as of the date of the filing of the complaint." *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1224 (10th Cir. 2012) (internal quotation marks and citation omitted). "To have Article III standing, the plaintiff must show that the conduct of which he complains has caused him to suffer an injury in fact that a favorable judgment will redress." *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1168 (10th Cir. 2011) (internal quotation marks and citation omitted).

In arguing that JCM lacks standing, the defendant relies principally on the following statement appearing in the Tenth Circuit decision of *Morsey v. Chevron, USA, Inc.*, 94 F.3d 1470, 1478 (10th Cir. 1996):

> Assuming without deciding that Morsey acquired his leasehold by an assignment broad enough to include his predecessors' causes of action as to Section 20, he cannot recover for injuries inflicted on the leasehold before he acquired it. Any tort for damages done to the leasehold before he acquired it belonged to his predecessors-in-interest *and lapsed when they transferred it*. In Kansas, tort claims such as those in question are unassignable.

The defendant keys on the italicized language to argue that JCM's tort action lapsed in November of 2012 when it transferred all of its property to JCM 082763. The defendant contends that JCM 082763 filed this lawsuit in December of 2012 as the owner of the property, that JCM has not had an ownership interest in the property since before the lawsuit was filed, and that Meacham has never had an ownership interest. Additionally, the defendant argues that Meacham as a member/manager of these limited liability companies does not own the company's property and has no right to sue on his own behalf.

The plaintiff Meacham, as the only shareholder in the limited liability companies, concedes he was added as a personal party plaintiff only out of an abundance of caution. Recognizing that Kansas law disallows the assignment of tort actions, JCM contends this tort action for damages never transferred to JCM 082763 in November of 2012 and always remained with JCM. The plaintiff offers that there are no Kansas cases holding that a

5

transferor necessarily loses the right of an action for property damage upon transferring the property.

Other than quoting the italicized language from *Morsey* and citing decisions that have quoted *Morsey* decision, the defendant does not attempt to explain or defend the concept that an unassignable tort claim "lapses" upon its transfer. This concept was not applied in *Morsey*, and it stands as little more than dicta in that decision. The *Morsey* decision cites no authority for this concept of lapsing, and none of the Kansas court decisions cited in *Morsey* apply or support this concept. Indeed, the defendant does not cite a single decision applying this lapsing concept.[1]

To have an injury that can be redressed, the plaintiff must possess the substantive right being asserted. "The identify of this real party in interest is determined by referring to the governing substantive law." *Esposito v. U.S.*, 368 F.3d 1271, 1273 (10th Cir. 2004) (citations omitted). The parties agree that tort claims are not assignable in Kansas. *Stechschulte*

---

[1] The defendant cites the unpublished decision of *Jenkins v. MTGLQ Investors*, 218 Fed. Appx. 719, 2007 WL 431498 (10th Cir. 2007), in which a *pro se* plaintiff filed a quiet title action in Utah state district court asserting he was an accommodation party by having pledged the real property as security for a loan from the defendant's predecessor. The defendant removed this action to federal district court which eventually dismissed the case for failure to state a claim. One of the grounds for dismissal for this quiet title action was "that Mr. Jenkins lacked standing because he had sold the property in question prior to filing suit and because he was not an accommodation party under Utah law." 218 Fed. Appx. at 722. The defendant cites *Jenkins* without identifying it as a quiet title action and then offers no analysis on how the issue of standing in a quiet title action parallels the issue of standing in a tort action for property damage when the property is transferred before filing suit.

*v. Jennings*, 297 Kan. 2, 30, 298 P.3d 1083 (2013). Consequently, any attempt to assign torts is "invalid" and the assignee acquires "no rights." *Heinson v. Porter*, 244 Kan. 667, 675, 772 P.2d 778 (1989), *overruled on other grounds*, *Glenn v. Fleming*, 247 Kan. 296, 799 P.2d 79 (1990). Thus, "if an assignment is invalid or incomplete, the assignor may still maintain a suit in his or her own name." 6 Am. Jur. 2d *Assignments* § 122 (2008); *see, e.g.*, *Postal Instant Press v. Jackson*, 658 F. Supp. 739, 741 (D. Colo. 1987) (Colorado law); *Davis v. Scott*, 320 S.W.3d 87, 91-92 (Ky. 2010) (Kentucky law) (citing *Weiss v. Leatherberry*, 863 So.2d 368, 373 (Fla. Dist. Ct. App. 2003); *Botma v. Huser*, 202 Ariz. 14, 39 P.3d 538, 542 (2002); *Weston v. Dowty*, 163 Mich. App. 238, 414 N.W.2d 165, 167 (1987); *Tate v. Gois, et al.*, 24 S.W.3d 627, 635 (Tex. App. 2000)). Similarly, a court applying Kansas law found the *pro se* plaintiff as the assignee of tort claims was not the real party in interest, but it allowed the plaintiff later to add the assignor as the real party. *See, Patel v. Reddy*, 2012 WL 602130 at *3 (D. Kan. 2012). Finally, the Kansas Supreme Court in *Foster v. Capital Gas & Electric Co.*, 125 Kan. 574, 265 Pac. 81 (1928), addressed a real party in interest challenge against the plaintiffs who owned their home under contract but were suing the gas company for an explosion that destroyed their home. The Court found:

> It is contended by the gas company that the plaintiffs cannot recover because they are not the real parties in interest. It appears that plaintiffs were purchasing the property in question from L.F. Garlinghouse on an installment contract; that they had paid

> approximately $600, leaving a balance due of about $3,500. The home having been destroyed, plaintiffs could no longer make payments to Garlinghouse. They thereupon entered into a new contract with Garlinghouse whereby they were relieved from further liability on the old one upon payment by them to Garlinghouse of the sum of $3,500 when it was recovered from those liable for the explosion. It is argued that this was such an annulment of the original contract of purchase that the plaintiffs cannot recover. It is conceded that the tort is not assignable, for which reason Garlinghouse cannot recover. The defendant cites and relies upon the rule stated that, where a contract for the sale of land is rescinded by mutual consent, the rights of the parties thereunder are extinguished. 39 Cyc. 1355, 1358. We think the rule has no application here. A cause of action existed between the plaintiffs and Garlinghouse in which the defendants were in no way interested. It is entirely separate and distinct from the cause of action which arose in favor of the plaintiffs through destruction of their property by negligence of the defendants. The supplemental agreement between the plaintiffs and Garlinghouse constituted no satisfaction or release of defendant's liability. The contention cannot be sustained.

125 Kan. at 82-83. Thus, the plaintiffs in *Foster* retained their tort cause of action for property damage even though their ownership interest in the property was later extinguished. Based on *Foster* and the generally established rule that an invalid assignment does not preclude the assignor from later suing in its name, the court rejects the defendant's argument that JCM's existing tort action for property damage "lapsed" when the real property was transferred to JCM 082763.

      As for the standing of Jerry Meacham as the member/manager of the limited liability companies, Kansas law is quite clear that "[a] limited-liability company may own property in its own name, and members have no ownership interest in specific limited-liability company property." *In re Tax Exemption*, 44 Kan. App. 2d 467, 470, 239 P.3d 99 (2010) (citing K.S.A. 17-

8

76,111). The plaintiff Meacham comes forward with no legal or factual basis for ownership of this cause of action. Thus, the defendant's motion to dismiss Meacham is granted without prejudice.

**PUNITIVE DAMAGES**

Rule 56 authorizes a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it would affect the outcome of a claim or defense under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he dispute about a material fact is 'genuine,' . . ., if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. at 251–52. Put another way, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indust. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *See Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).

Kansas law, K.S.A. 60-3702(c), requires the plaintiff to prove his claim for punitive damages "by clear and convincing evidence in the initial phase of the trial, that the defendant acted toward the plaintiff with willful

conduct, wanton conduct, fraud or malice." Kansas law also limits the punitive damage liability of Heinen Bros. for Adam Way's conduct only if it authorized or ratified Way's conduct. K.S.A. 60-3702(d)(1); *see Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d 118, 130, 79 P.3d 1081 (2003). "[W]anton conduct . . . is defined as the reckless disregard for the rights of others with a total indifference to the consequences." *Danisco Ingredients USA, Inc. v. Kansas City Power & Light Co.*, 267 Kan. 760, 772, 986 P.2d 377 (1999) (citation omitted). For the plaintiff to establish wanton conduct, it "must show that the act was performed with a realization of the imminence of danger, and, second, that the act was performed with reckless disregard or complete indifference to the probable consequences of the act." *Adamson v. Bickness*, 295 Kan. 879, 890, 287 P.3d 274 (2012) (internal quotation marks and citation omitted). "Wantoness refers to the mental attitude of the wrongdoer rather than a particular act of negligence." *Id.* In *Adamson*, the Kansas Supreme Court explained:

> On a sliding scale, wanton behavior falls between negligent behavior and willful or malicious misconduct. Wanton acts are those showing that the defendant realized the imminence of injury to others and refrained from taking steps to prevent injury because of indifference to the ultimate outcome, not that the defendant lacked simple due care. In other words, "the actor [must] have reason to believe his act may injure another, and [commits the act anyway,] being indifferent to whether or not it injures [another]." (Emphasis added.) *Frazier v. Cities Service Oil Co.*, 159 Kan. 655, 666, 157 P.2d 822 (1945); *see also Elliott v. Peters*, 163 Kan. 631, 634, 185 P.2d 139 (1947) ("[W]antonness involves a state of mind indicating indifference to known circumstances.... There is a potent element of consciousness of danger in wantonness.").

*Id.* at 890. Typically, it is a question of fact for the jury to decide whether conduct is wanton, unless the question becomes one of law because no reasonable persons could reach a different conclusion on wantonness from the same evidence. *Danaher v. Wild Oats Markets, Inc.*, 779 F. Supp. 2d 1198, 1213 (D. Kan. 2011) (citation omitted).

In its reply brief, the defendant concedes for purposes of its summary judgment motion that on the morning in question the wind speed was between 11.8 and 13.8 mph and that KDA investigator Denton observed drift damage on the plaintiff's property at least three-quarters of a mile from the target field. It is also uncontroverted that the wind was blowing toward the plaintiff's hunting preserve at the time of spraying. The warning label on the herbicide Ultra Remedy warns:

> Make applications only when there is little or no hazard from spray drift. Small quantities of spray, which may not be visible, may seriously injure susceptible plants. Do not spray when wind is blowing toward susceptible crops or ornamental plants that are near enough to be injured.

(Dk. 49-1, p. 4). The warning label establishes that the pilot realized the imminence of danger in aerially applying the herbicide when the wind was blowing toward the plaintiff's trees. The warning label includes recommended measures for reducing drift including, "Drift potential is lowest between wind speeds of 2 to 10 mph." *Id.* at p. 5. Mr. Hawkins who witnessed the spraying avers that herbicide "was drifting like crazy." (Dk. 49-5, p. 3). He also opined the wind speeds that morning were at least

11

between 11.5 and 13.8 mph. It is a credibility call for the jury to weigh this evidence against the pilot Way's written statement that he measured the wind speed at 5 mph. The plaintiff responds that, "the wind speed on June 6th, which is the date Way indicates he sprayed the target property may have been 5 mph; however, on the actual date of the spraying [June 15th] the wind was at least 13.8 mph." (Dk. 49, p. 3). A rational factfinder could conclude from this evidence that the pilot acted with reckless disregard or complete indifference to the probable consequences of applying the herbicide under these conditions.

The current evidentiary record is enough for a rational jury to find that the defendant ratified its pilot's conduct. "Ratification, under the punitive damages statute, may be either express or implied and may be accomplished before, during, or after the employees' questioned conduct." *Werdann v. Mel Hambelton Ford, Inc.*, 32 Kan. App. 2d at 131. "It may be based on an express ratification or based on a course of conduct indicating the approval, sanctioning, or confirmation of the questioned conduct." *Smith v. Printup*, 254 Kan. 315, 342, 866 P.2d 985 (1993). "Failure to discipline an employee for wrongful conduct can be considered as evidence of ratification by the employer." *Werdann*, 32 Kan. App. 2d at 131 (citations omitted).

Scott Heinen, the defendant's representative, testified that the pilot Way was not disciplined for this spraying incident. When asked if Way

had done anything wrong in applying the spray, Heinen testified "no" and then answered "yes" to whether he ratified everything the pilot did in this regard. (Dk. 49, p. 13). As the defendant argues, the plaintiff did fail to comply with D. Kan. Rule 56.1(b)(2) in its presentation of Heinen's testimony in this regard. A sanction of striking and disregarding Heinen's testimony from the plaintiff's response is unreasonable under the circumstances. This procedural non-compliance is overshadowed by the defendant's decision to seek summary judgment on this subject when its corporate representative had already expressly ratified the employee's conduct. Summary judgment is denied on the claim of punitive damages.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 45) is granted insofar as the plaintiff Jerry C. Meacham is dismissed without prejudice for lack of standing at this time, and is denied in all other respects.

IT IS FURTHER ORDERED that the plaintiffs' motion for hearing (Dk. 50) on the summary judgment motion is denied.

Dated this 10th day of December, 2013, Topeka, Kansas.


s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge